UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Marie Therrien

    v.                                 Civil No. 16-cv-185-LM
                                        Opinion No. 2017 DNH 079
Nancy A. Berryhill,
Acting Commissioner
of Social Security[1]


**O R D E R**

Marie Therrien seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 423 and § 1382. In support, Therrien contends that the Administrative Law Judge ("ALJ") erred at Step Two of the sequential analysis, failed to properly weigh the medical opinion evidence, and improperly assessed her subjective complaints of pain. The Acting Commissioner moves to affirm.

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin. See Fed. R. Civ. P. 25(d).

## Standard of Review

In reviewing the decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castillo Condo. Ass'n v. U.S. Dep't of Housing & Urban Dev., 821 F.3d 92, 97 (1st Cir. 2016) (internal quotation marks omitted). The court will uphold the ALJ's findings, even if the record could support another conclusion, as long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlinda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## Background

Marie Therrien filed for social security benefits in May 2013, when she was 33 years old. She has a high school

education and previously worked in a fast food restaurant and as a parking lot cashier. She lives with her children, as a single parent.

Her medical records begin in December 2012 when she was admitted for in-patient mental health treatment because of depression and suicidal thoughts. On admission, Dr. David M. Ledner recorded that Therrien's physical examination was "essentially unremarkable." Therrien received medication and group therapy. She was discharged a week later with a diagnosis of "major depressive disorder, recurrent, severe."

In February 2013, Therrien's carpal tunnel syndrome was treated with a decompression procedure. Therrien had a normal mood and affect during an appointment with Peter Barr, Physician's Assistant, in March 2013.

Therrien saw her treating physician, Dr. David Kehas, in May 2013, because of right neck and shoulder pain that Therrien said had been intermittent over the past few years. On examination, Dr. Kehas found that Therrien was alert, cooperative, and in no distress. He found her cranial nerves were intact, decreased sensation to touch and temperature in her right arm and fingers, her right arm reflexes were brisk, and her strength was four out of five due to pain.

A few days later, Dr. Kehas filled out a "Physical Capacities" section of a document titled "Physician/Clinician Statement of Capabilities." He noted Therrien's diagnoses for cervical radiculopathy, plantar fasciitis, carpal tunnel syndrome, and low back pain. In Dr. Kehas's opinion, Therrien could do work at the sedentary and light physical levels, with some limitations on postural activities and a need to avoid heights and hard floors. He found that she could occasionally do manipulative activities and pushing and pulling. Dr. Kehas also found that Therrien could do work activities for only 20 to 25 hours per week.

Therrien had her annual examination with Dr. Kehas on May 14, 2013. She reported back pain without help from medication. Dr. Kehas noted that Therrien had a body mass index ("BMI") of 53.75, which correlates to obesity. On examination, Dr. Kehas found that Therrien was in no acute distress and her gait, sensation, reflexes, cranial nerves, and motor strength were all normal. Dr. Kehas told Therrien to come back in a year.

The same day, Leslie Clukay, A.P.R.N., completed the "Psychological Capacities" part of the "Physician/Clinician Statement of Capabilities." Clukay stated that Therrien's psychological condition began in August 2008. Despite her condition, Clukay indicated that Therrien had no deficits and

4

was not limited in her ability to perform a list of activities, including socially acceptable behavior, remembering work procedures, and driving.  In some other areas, Clukay responded "unknown."  She wrote that other medical issues had exacerbated Therrien's psychiatric symptoms.  Clukay then stated that Therrien was unable to work.

Therrien had an MRI of her cervical spine, also done in May 2013.  Because she moved during the study, the results were limited.  The reviewing doctor reported no significant disc desiccation or disc height loss, a disc protrusion, and mild bulging and narrowing at C6-C7.  Therrien had an MRI of her right shoulder in June 2013.  The reviewing doctor reported mild to moderate tendinosis and narrowing.

Dr. Hugh Fairley, a state agency physician, reviewed Therrien's records on July 19, 2013.  He found that Therrien had severe impairments due to obesity; a skin disease, hidradenitis suppurativa ("HS"); disorders of muscle, ligament, and fascia; and carpel tunnel syndrome.  Despite those impairments, Dr. Fairley found that Therrien could frequently lift up to 10 pounds, could stand or walk for two hours in an eight-hour work day, could sit for six hours, had an unlimited ability to push or pull up to 10 pounds, and could occasionally climb ramps or stairs.  She could not do some postural activities but could

occasionally do others.  Her ability to do manipulative activities was not limited.

Therrien had a consultative mental health evaluation on August 14, 2013, with Juliana Read, Ph.D.  Dr. Read found that Therrien could communicate effectively and interact appropriately with others, could understand and remember all instructions and procedures, and could maintain attention and concentration.  Dr. Read also found that Therrien could make simple decisions and tolerate stress in the work setting.

Michael Schneider, Psy.D., a state agency psychologist, reviewed Therrien's records on August 15, 2013.  Dr. Schneider found that Therrien had a severe anxiety disorder and a nonsevere affective disorder.  Because of those issues, Therrien had mild restrictions in her daily activities and maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning.  In assessing Therrien's specific functions, Dr. Schneider found no limitations or no significant limitations in most functions and moderate limitation in her ability to interact appropriately with the general public.  Dr. Schneider's opinion was that Therrien would be able to work without problems from psychological symptoms except that she should not work directly with the public.

Because of complaints of back, knee, and hip pain, Dr. Brian Klagges ordered an MRI for Therrien in December 2013. The results were completely normal. Dr. Klagges wrote that he had no explanation for Therrien's complaints of pain.

Therrien had gastric bypass surgery on December 23, 2013. In February 2014, Therrien saw Dr. Klagges because of debilitating back pain and pain radiating to her right knee. Dr. Klagges noted Therrien's described pain and that the pain had not been controlled by other treatment. Lumbar medial branch blocks administered in April 2014 did provide relief from the pain.

In May 2014, Therrien saw Dr. Lisa Doyle because of a rash on her abdomen that had lasted for three days. Dr. Doyle noted that Therrien's BMI was 34.78. Dr. Doyle also noted an assessment of HS, along with other conditions, but diagnosed the rash as eczema to be treated with hydrocortisone cream.

Therrien saw Dr. Kehas again in June 2014 because of back, neck, and arm pain. On examination, Therrien was in no distress, had a full range of motion, had some back tenderness, and had other normal results. Dr. Kehas found that she was improved overall and advised her to follow up with psychiatry.

Dr. Kehas completed a "Residual Functional Capacity Questionnaire" on July 10, 2014. He stated that Therrien had

7

been diagnosed with back pain and bipolar disorder and that her prognosis was fair. He said that Therrien had back pain with radiation and severe depression, which would frequently interfere with the attention and concentration necessary for work. He also said that her medications caused drowsiness.

Although Dr. Kehas found that Therrien could walk half a city block without rest or pain, he also found that she could stand or walk for only five minutes at a time. He found that she would need breaks to lie down and rest, that she could sit for 15 minutes at a time for up to four hours in a day, and that she would need a job that allowed her to change positions. She could lift up to 10 pounds and had no limitations in manipulation activities. Dr. Kehas said that Therrien was not able to work an eight-hour day for five days per week. In October 2014, Dr. Kehas provided his opinion that Therrien met the listing for HS in 20 C.F.R. Part 404, Subpart P, App. 1.

Therrien sought treatment for headaches in July 2014. On examination, John R. Pettinato, D.O., found all normal results. He discussed a healthy lifestyle to avoid headaches.

On July 21, 2014, Therrien saw Clukay for follow up on depression, anxiety, and personality disorder. Therrien reported she felt pretty good because she was taking her medications. On examination, Clukay found all normal results.

8

A hearing on Therrien's social security applications was held before an ALJ on October 14, 2014. Therrien testified that she was unable to work because of pain and mood swings. She also said that she relied on her children and other family members to help with household activities, including care for her children. A vocational expert also testified.

The ALJ issued a decision on November 18, 2014, concluding that Therrien was not disabled. The ALJ found that despite severe mental and physical impairments, Therrien retained the ability to do sedentary work with some restrictions and that although she could not return to her prior work there were other jobs that she could do. The Appeals Council denied Therrien's request for review.

**Discussion**

Therrien contends that the ALJ erred in failing to find additional severe impairments at Step Two, in assigning limited weight to Dr. Kehas's opinions and Clukay's opinions, and in failing to consider the effect of her subjective complaints of pain on her ability to work. The Acting Commissioner moves to affirm.

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520;

§ 416.920.[2] The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.[3] Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

I. Step Two Finding

The ALJ found that Therrien had the following severe impairments: degenerative disc disease of the cervical spine, right shoulder tendonitis, depression, and anxiety. Therrien contends that the ALJ erred in failing to also find severe impairments of obesity, HS, and carpal tunnel syndrome.[4] The Acting Commissioner argues that the ALJ made the correct finding

---

[2] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

[3] The first four steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and her ability to do past relevant work. 20 C.F.R. § 404.1520(a).

[4] Although Therrien mentions carpal tunnel syndrome, she does not provide any argument to show why carpal tunnel syndrome was a severe impairment.

10

at Step Two and that reversal is not necessary, in any case, because he proceeded through the remaining steps of the sequential analysis and considered the effects of all of her impairments.

At Step Two, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that is severe. § 404.1520(a)(4)(ii). The severity requirement is a threshold test "designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). Nevertheless, to be severe within the meaning of the regulations, the impairment or combination of impairments must significantly limit the claimant's "physical or mental ability to do basic work activities." § 404.1520(c). Errors at Step Two are harmless as long as the ALJ found at least one severe impairment, continued on with the sequential analysis, and considered the effect of all impairments on the claimant's functional capacity. See Fortin v. Colvin, No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *10 (D. Mass. Mar. 31, 2017).

Therrien argues that obesity can increase the severity of other impairments, citing Titles II and XVI: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). She contends that her obesity "likely exacerbated" her neck and back

11

pain and sleep disturbance, but she cites no evidence in the record that shows such exacerbations did occur. In support of a finding that HS was a severe impairment, Therrien cites a medical treatment note and a diagnosis that was not included in the parties' joint statement of material facts. See Lawton v. Astrue, No. 11-cv-189-JD, 2012 WL 3019954, at *9 (D.N.H. July 24, 2012) (noting that an issue based on records not included in the joint statement may have been waived). Therrien also cites the opinion of the state agency physician that obesity and HS were severe impairments

The ALJ explained in the decision why he did not find obesity, HS, and carpal tunnel syndrome to be severe impairments. With respect to obesity, the ALJ noted that Therrien's gastric bypass surgery in December 2013 had caused her to lose a significant amount of weight so that her weight, post surgery, caused no more than a minimal impact on her functional capacity. Similarly, Therrien had a repair procedure for carpal tunnel syndrome and the records showed no limitations or need for treatment following the procedure. The ALJ also found that HS was not severe because of the lack of evidence of either treatment or symptoms. Substantial evidence in the record supports the ALJ's findings that obesity, HS, and carpal tunnel syndrome were not severe impairments.

Even if the ALJ's findings at Step Two were wrong, however, any error would be harmless because the ALJ did find severe impairments. Based on those impairments, the ALJ continued the sequential analysis and considered the effects of all of Therrien's impairments in the process. Therefore, no reversible error occurred.

II. Opinion Evidence

Therrien contends that the ALJ erred in assigning little weight to the opinions of Dr. Kehas and Clukay. She argues that Dr. Kehas's opinions should have been given controlling weight because he is her treating physician, that the ALJ failed to evaluate the opinions as required by § 404.1527, and that evidence in the record supported Dr. Kehas's opinions. Although she concedes that Clukay is not an acceptable medical source, Therrien argues that the ALJ should have considered Clukay's opinions because of her treatment relationship with Therrien. The Acting Commissioner contends that the ALJ properly discounted both opinions.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including

13

[the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion. § 404.1527(c).

   A. Dr. Kehas

"[U]nder the treating source rule, controlling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Arrington v. Colvin, --- F. Supp. 3d ---, 2016 WL 6561550, at *16 (D. Mass. Nov. 3, 2016) (internal quotation marks omitted). On the other hand, the ALJ may give little weight to a treating source's opinion if that opinion "is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians." Glynn v. Colvin, No, 16-CV-10145-LTS, 2017 WL 489680, at *2 (D. Mass. Feb. 6, 2017). While the regulations require an ALJ to consider the factors in

§ 404.1527(c) and give good reasons for the weight attributed to a treating source's opinion, there is no requirement that the ALJ explicitly examine each listed factor in the decision. See McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016); accord Genereux v. Berryhill, No. 15-13227-GAO, 2017 WL 1202645, at *2 (D. Mass. Mar. 31, 2017).

The ALJ reported in the decision Dr. Kehas's responses in the May 2013 physician statement of capabilities, and the July 2014 residual functional capacity questionnaire. The ALJ noted that Dr. Kehas indicated greater limitations in the 2014 questionnaire than in the 2013 statement but provided no explanation for the change and did not indicate that Therrien had any worsening symptoms to account for the change. The ALJ also noted that Dr. Kehas did not explain his limitation that Therrien could not do full-time work. The ALJ stated that the inconsistency between the two opinions without explanation made the opinions less persuasive.

The ALJ also found that Dr. Kehas's opinions were not supported by or consistent with the record evidence. In particular, the ALJ noted that Therrien's examination records did not show the abnormalities or deficits that would support the limitations in Dr. Kehas's opinions and that Dr. Kehas did not explain why he found those limitations and restrictions.

The ALJ then reviewed Therrien's medical records and treatment notes in detail and concluded that Dr. Kehas's opinions were not consistent with that record evidence. As a result, the ALJ gave Dr. Kehas's opinions little weight.

Therrien faults the ALJ for failing "to apply the 404.1527(c) checklist when discounting the opinions of Dr. Kehas." As noted above, however, the ALJ was not required to explicitly address each factor in § 404.1527(c).

Therrien argues that Dr. Kehas did not need to provide an explanation for the changes in his opinions between 2013 and 2014 because the record shows that her condition worsened. She asserts that the ALJ bore the burden to find an explanation. Therrien is mistaken. As demonstrated by the ALJ's review of her medical records, her condition did not worsen between 2013 and 2014. In addition, the ALJ is not obligated to contact Dr. Kehas to request an explanation when the record does not support Dr. Kehas's opinions.

Based on some treatment notes that she believes support her claim of disabling symptoms, Therrien contends that the ALJ's analysis of Dr. Kehas's opinion was faulty. She does not explain how these treatment notes support Dr. Kehas's opinions. In addition, as the ALJ's review of the record demonstrates, substantial evidence supports his findings. See Irlinda Ortiz,

955 F.2d at 769 (1st Cir. 1991) (holding that ALJ's finding must be affirmed if supported by substantial evidence even if other evidence exists to the contrary).

Therefore, the ALJ did not err in his assessment of Dr. Kehas's opinions.

### B. Leslie Clukay, A.P.R.N.

The ALJ assigned little weight to Clukay's opinion, which was provided in a completed psychological capabilities questionnaire, both because she is not an acceptable medical source under the regulations and her opinion was internally inconsistent and inconsistent with other record evidence. Therrien argues that although she is not an acceptable medical source, the ALJ was required to consider Clukay's opinion and was required to explain his consideration of the factors provided in § 404.1527(d). In support, Therrien cites Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decision on Disability by Other Governmental and Nongovernmental Agencies, SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006).

Contrary to Therrien's charge of error, the ALJ did consider Clukay's opinion. The ALJ assigned the opinion little weight because of its internal inconsistencies in describing

17

Therrien's limitations and because it was inconsistent with other evidence of psychiatric treatment in the record, which the ALJ reviewed in detail. As such, the ALJ properly assessed Clukay's opinion and cited record evidence that supports that assessment.

III. Subjective Complaints of Pain—Credibility

Therrien contends that the ALJ failed to consider the effect of her subjective complaints of pain on her ability to work. She argues that there is no indication in the decision that the ALJ followed the requirements of Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186 (July 2, 1996);[5] § 404.1529, and Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). Therrien is mistaken.

In assessing the intensity, persistence, and limiting effects of Therrien's impairments, the ALJ cited SSR 96-7p and listed the factors to be considered under § 416.929, the Title XVI rule that is the analog to § 404.1529. The ALJ considered Therrien's statements about her activities, symptoms, and limitations. The ALJ found specific inconsistencies in

---

[5] SSR 96-7p has been superseded by SSR 16-3p, which was issued on March 16, 2016, after the ALJ issued the decision.

Therrien's descriptions of her abilities and functioning, along with inconsistencies between Therrien's allegations of limitation and her treatment records, that undermined the persuasiveness of her subjective complaints.  As such, the ALJ properly considered the factors necessary to assess Therrien's credibility with respect to her subjective complaints of pain.  See Misterka v. Colvin, No. 15-cv-10203-MGM, 2016 WL 5334656, at *6 (D. Mass. Sept. 22, 2016) (noting that ALJ need not expressly analyze each factor).

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 8) is denied.  The Acting Commissioner's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 21, 2017

cc: Howard D. Olinsky, Esq.
    Stephan Patrick Parks, Esq.
    T. David Plourde, Esq.